IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MICHELE WIDMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:21-cv-748 (RDA/IDD) |
| ) | |
| LLOYD J. AUSTIN, III, *Secretary, U.S.* ) | |
| *Department of Defense*, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Lloyd J. Austin III's ("Defendant") Motion to Dismiss ("Motion") the Amended Complaint filed by Plaintiff Michele Widmer ("Plaintiff"). Dkt. 16. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered the Motion together with Defendant's Memorandum in Support (Dkt. 17), Plaintiff's Opposition (Dkt. 19), and Defendant's Reply (Dkt. 20), this Court denies the Motion but limits the scope of Plaintiff's retaliation claims for the reasons that follow.

I. BACKGROUND[1]

Plaintiff Michele Widmer was an employee for the U.S. Department of Defense, National Geospatial-Intelligence Agency ("NGA"), led by Secretary Lloyd J. Austin III. Dkt. 15 ¶ 1. In her Amended Complaint, Plaintiff alleges that the NGA took several actions, including manipulating her payroll, downgrading her performance evaluation, and searching her desk after

---

[1] For purposes of considering the Motion, the Court accepts all facts contained within Plaintiff's Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

work hours, in retaliation for her protected activities. *Id.* Widmer further alleges that she was forced from the workplace by these actions. *Id.*

As alleged in her Amended Complaint, Plaintiff had one Equal Employment Opportunity ("EEO") complaint pending against the NGA in 2015[2] and 2016, and she filed an additional case against the NGA in the Equal Employment Opportunity Commission ("EEOC") on or about December 6, 2017.[3] *Id.* ¶¶ 10, 13. Plaintiff alleged that her supervisor, Mike Markey, and manager, Mark Damiano, made "disparaging comments" including "frequent berating" of Plaintiff. Dkt. 15 ¶ 22. Plaintiff's male coworkers were not subjected to this disparagement. *Id.* This allegedly included "blowjob" jokes by Markey, in addition to Markey calling Plaintiff an "old English sheepdog" and supervisors denying Plaintiff training because of her age and experience. Dkt. 15 ¶¶ 23-24.

Plaintiff alleges that two of her supervisors, G. Lauber and W. Towle, each of whom were aware of her protected activity, accessed and modified her timecards in retaliation for the EEO Case and EEOC Case approximately 20 times each between December 6, 2017 and January 4, 2018. *Id.* ¶¶ 15-21. Her supervisors allegedly changed her entries from regular paid hours to unpaid advance leave hours, despite Plaintiff having approved leave time, resulting in nonpayment for 96 hours of work, or $6,408. *Id.* ¶¶ 15-16.

---

[2] Plaintiff alleges that her supervisors' inappropriate behavior that led to the EEO case occurred in 2015, but it is not clear that this case was "pending" in 2015. Dkt. 15 ¶¶ 10, 22.

[3] Plaintiff's Amended Complaint explicitly references the "EEO Case," Agency No.: NGAE-16-PA003. Dkt. 15 ¶ 10. Defendant has attached a document titled "Hearing Request Transmittal to EEOC" with Agency Case No. NGAE-16-PA003. Dkt. 17-2. The Amended Complaint also references the "EEOC Case," No.: 570-2017-00382X, which was allegedly filed December 6, 2017. Dkt. 15 ¶¶ 11, 13. Neither of Defendant's attachments contain this case number. Dkt. 17-1, 17-2.

Prior to February of 2018, Plaintiff had asked Supervisor J. Maloney and EEO officer Mr. Jackson to be reassigned outside her immediate supervisor chain of command, due to alleged harassment and a hostile working environment. *Id.* ¶ 26. However, in February of 2018 the NGA reassigned Plaintiff to Supervisor J. Martin, who Plaintiff claims engaged in the conduct alleged in her underlying EEO and EEOC cases. *Id.* ¶ 25. Plaintiff alleges she was diagnosed with post-traumatic stress disorder ("PTSD") and anxiety later that month, as a result of "pervasive hostile work environment" and "ongoing acts of retaliation." *Id.* ¶ 28. In response, she applied to several Joint Duty Assignment positions and accepted an offer to work at the Office of the Director of National Intelligence ("ODNI"). *Id.* ¶¶ 29-31.

According to the Amended Complaint, Supervisor Lauber improperly downgraded Plaintiff's performance evaluation. *Id.* ¶ 32. Lauber allegedly changed Plaintiff's "Close Out" evaluation to an "Interim" evaluation on April 4, 2018, and entered a new, wrongly downgraded "Close Out" evaluation on July 10, 2018, hurting "her ability for future compensation increases and promotions." *Id.* ¶¶ 32-35. Plaintiff also alleges that in mid-April 2018, Supervisors Lauber, Towle, and others again manipulated her timecard to reduce her pay. *Id.* ¶ 36. According to Plaintiff, she was also falsely accused of timecard fraud in mid-April 2018 in retaliation for her protected activities. *Id.* As a result of these allegations of timecard fraud, Plaintiff alleges that 17.1 hours of donated Leave Bank hours were deleted from her account balance in June of 2018. *Id.* ¶ 37.

Plaintiff lists May 14, 2018 as the date the NGA Office of General Counsel ("OGC") received interrogatories and legal documentation from an EEOC administrative law judge ("ALJ") regarding Plaintiff's EEOC case. *Id.* ¶ 38. As alleged in the complaint, receiving this paperwork

alerted the OGC of Plaintiff's claims of unlawful discrimination and retaliation.[4]  *Id.*  Plaintiff alleges that about three days later, Agency Investigator Norris searched her desk after work hours without her notice or permission.  *Id.* ¶¶ 39-40.  Plaintiff claims that Norris was looking for information Plaintiff had discussed and disclosed to the Agency in the EEOC Case, and that the search left her feeling shaken and physically unsafe.  *Id.* ¶¶ 40, 42.

Furthermore, Plaintiff alleges that Defendant delayed her move from NGA to her new position at ODNI on May 25, 2018 for retaliatory reasons.  *Id.* ¶ 45.  On her last working day at NGA, supervisors allegedly delayed Plaintiff's move to the new position, and Plaintiff was not told of this delay until the business day before her official start date.  *Id.* ¶¶ 46-47; *see also id.* ¶ 51 (alleging supervisors "took steps to delay or prevent" Plaintiff's transition to the new job).  This timing allegedly created a "difficult workplace situation" at Plaintiff's new job, as her new manager had no advance notice of the delay.  *Id.* ¶ 50.  Supervisor Maloney's stated reason for the delay was to understand a project Plaintiff had worked on, but Plaintiff claims that in April of 2018, she made Maloney aware that she had completed the project .  *Id.* ¶ 48.

Plaintiff alleges she was subjected to retaliatory acts and an ongoing intolerable work environment because she participated in activities protected by Title VII and the Age Discrimination in Employment Act.  *Id.* ¶¶ 54, 56, 59, 61.  As grounds for her relief, she invokes Title VII, 42 U.S.C. §§ 2000e and the Age Discrimination in Employment Act of 1967, as amended 29 U.S.C. § 633a-Retaliation.  *Id.* ¶¶ 53-57.  She claims that these actions resulted in lost wages in

---

[4] Defendant claims the EEOC case ended on May 14, 2018, with the ALJ granting summary judgment in the NGA's favor.  Dkt. 17 at 4 n.3.  This timeline may indicate that the interrogatories were sent earlier than Plaintiff's claimed date.  But for purposes of the motion to dismiss, this Court considers the operative date to be May 14, 2018, at the latest.

the form of back pay, lost benefits and entitlements, damage to her career and reputation, and other compensatory damages. *Id.* ¶¶ 57, 62.

After the District Court for the District of Columbia transferred the case to the Eastern District of Virginia on June 22, 2021 (Dkt. 10), Defendant filed a Motion to Dismiss for Failure to State a Claim (Dkt. 12) and a Memorandum in Support (Dkt. 13) on August 23, 2021. On September 6, 2021, Plaintiff filed an Amended Complaint against Defendant. Dkt. 15.[5] On September 20, 2021, Defendant moved to dismiss the Amended Complaint for failure to state a claim. Dkt. 16. On October 4, 2021, Plaintiff opposed Defendant's motion (Dkt. 19), and on October 12, 2021, Defendant filed a Response in Support (Dkt. 20).

## II. STANDARD OF REVIEW

On a Rule 12(b)(6) motion, the Court considers the sufficiency of a complaint. *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011). "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal is appropriate only if the well-pleaded facts in the complaint "state a claim that is plausible on its face.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

At the motion-to-dismiss stage, a plaintiff need only "allege facts sufficient to state all the elements of her claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003),

---

[5] The Court denied as moot Defendant's motion to dismiss the original complaint. Dkt. 24.

and "the district court must 'accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff].'" *Dao v. Faustin*, 402 F. Supp. 3d 308, 315 (E.D. Va. 2019) (quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015)). Still, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."). And "[g]enerally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb*, 791 F.3d at 508).

## III. ANALYSIS

Plaintiff alleges Defendant retaliated against her for her complaints of age and sex discrimination raised in her EEO and EEOC cases. Count I of Plaintiff's Amended Complaint alleges retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a). Dkt. 15 at 11. Count II alleges violation of the Age Discrimination in Employment Act ("ADEA") of 1967, as amended 29 U.S.C. § 633a. Dkt. 15 at 12.

To state a *prima facie* retaliation claim under either Title VII or the ADEA, a plaintiff must sufficiently allege "(1) that she engaged in protected activity, (2) that the employer took a materially adverse action against her and (3) that there is a causal connection between the protected activity and the adverse action." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 195 (4th Cir. 2019) (internal citations omitted) (applying this standard in Title VII action); *see also Johnson v. Mechs.*

*& Farmers Bank*, 309 F. App'x 675, 684 (4th Cir. 2009) (describing retaliation standard under the ADEA).

### A. Engagement in Protected Activity

Taking all facts alleged in the Amended Complaint as true, Plaintiff alleges that she engaged in protected conduct when she filed her EEOC case alleging age and sex discrimination on December 6, 2017. Dkt. 15 ¶ 11. *See* 42 U.S.C. § 2000e-3(a) ("made a charge" is protected activity). Defendant attaches Plaintiff's EEO complaint and her hearing request transmittal to the EEOC (Dkt. Nos. 17-1, 17-2) in order to rebut this claim. If a document is "integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity," the Court may consider these attachments without converting the motion to one for summary judgment. *Edwards v. Murphy-Brown, LLC*, 760 F. Supp. 2d 607, 618 (E.D. Va. 2011) (citations and internal quotation marks omitted).

While it is true that Plaintiff's Amended Complaint explicitly references and relies upon her EEO case (Dkt. 15 ¶ 10), neither of Defendant's attached documents indicate when Plaintiff filed her EEOC case; moreover, neither contain her EEOC case number. Dkt. Nos. 17-1, 17-2. Plaintiff's claim that she filed her *EEOC* case on December 6, 2017 is not contradicted by her *EEO* charge (Dkt. 17-1), which was admittedly filed much earlier. Dkt. 15 ¶ 10. Nor is it contradicted by her Hearing Request Transmittal to the EEOC (Dkt. 17-2), which does not contain the EEOC case number referenced in her Amended Complaint. Dkt. 15 ¶ 11. Thus, for purposes of the Motion, this Court considers December 6, 2017 to be the date Plaintiff filed her EEOC case. The Court also considers May 14, 2018 to be a date that Defendant was notified of protected activity, as Plaintiff alleges that her employer's Office of General Counsel ("OGC") was notified of her EEOC case when they received related interrogatories on that date. Dkt. 15 ¶ 38.

7

B. Materially Adverse Action

To allege a "materially adverse action" for a Title VII retaliation claim, Plaintiff must allege that her employer took actions that may dissuade a reasonable employee from making or supporting a charge of discrimination. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). Plaintiff alleges that she suffered an adverse action when her supervisors modified her payroll to short her of $6,408 of pay. Dkt. 15 ¶ 15. As Defendant concedes for purposes of the Motion (Dkt. 17 at 13-14 n.8), this is sufficient to meet the standard for "material adversity," as shorting an employee of pay may dissuade them from bringing a charge of discrimination. The NGA allegedly manipulated Plaintiff's timecard and made false allegations of timecard fraud against her in April of 2018, resulting in the deletion of 17.1 of her leave hours the following June. For the same reasons, these alleged acts also meet the "materially adverse" standard. *See Wells v. Gates*, 336 F. App'x 378, 385 (4th Cir. 2009) (finding that loss in compensation and denial of sick leave hours constituted a "materially adverse" action (citing *Burlington N.*, 548 U.S. at 73)).

Plaintiff makes various additional allegations, which, taken individually, do not constitute "materially adverse" actions. *See* Dkt. 15 ¶¶ 25-35, 39-52. Plaintiff alleges that she was reassigned to Supervisor Martin against her will in February of 2018 and that her desk was searched after hours. These alleged actions do not rise to the level of "material adversity," as Title VII does not protect employees from "petty slights or minor annoyances that often take place at work." *See Burlington N.*, 548 U.S. at 68. Furthermore, Supervisor Martin was not named in Plaintiff's EEO complaint, making it implausible that her reassignment, absent any alleged adverse consequences, would deter her from supporting a charge of discrimination. Dkt. 17-1; *see also Chapman v. Geithner*, No. 1:11-cv-1016, 2012 WL 1533514, at *22 (E.D. Va. Apr. 30, 2012), *aff'd*, 507 F.

App'x 299 (4th Cir. 2013) (holding that a reassignment to different supervisors, without additional allegations such as a significant change in work, was not a "materially adverse" action).

Plaintiff further alleges that her employer downgraded her performance evaluation, but this allegation is conclusory. Plaintiff fails to specify what her downgraded score was or allege any consequences such as a resulting demotion or loss in pay. *See* Dkt. 15 ¶ 32-35. *See Parsons v. Wynne*, 221 F. App'x 197, 198 (4th Cir. 2007) (finding that a poor performance evaluation, without additional adverse consequences, did not satisfy the "materially adverse" standard); *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 833 (E.D. Va. 2016) (holding that reprimands without further adverse consequences did not satisfy the "materially adverse" standard). Similarly, Plaintiff's allegation that Defendant delayed the start to her joint duty assignment is conclusory, as she fails to specify what her supervisors did to delay her start, and the only alleged consequence was that this created a "difficult workplace situation." Dkt. 15 ¶¶ 47-52.

Taken together, however, Plaintiff plausibly alleges a campaign of retaliatory harassment.[6] *See Feminist Maj. Found. v. Hurley*, 911 F.3d 674, 686 (4th Cir. 2018) (recognizing that "retaliatory harassment" may rise to the level of material adversity). Plaintiff has alleged payroll modification and deleted leave hours, each of which constitute "materially adverse" actions, in addition to other, less severe conduct over the course of several months. While ultimately these allegations will require more proof, at this stage Plaintiff has sufficiently alleged that her employer

---

[6] Defendant argues that Plaintiff's complaint did not sufficiently allege retaliatory harassment. Dkt. 17 at 5. But retaliatory harassment is merely one way to establish the "material adversity" element of a Title VII retaliation claim; it is not a separate cause of action. *See Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001). Furthermore, Plaintiff's Amended Complaint refers to Defendant's alleged conduct as "retaliatory harassment," and both counts allege that Defendant created an "ongoing intolerable work environment." Dkt. 15 ¶¶ 52, 56, 62.

took several actions which, taken together, might dissuade a reasonable worker from bringing or supporting a charge of discrimination. *See Burlington N.*, 548 U.S. at 57.

### C. Causation

To establish causation, Plaintiff must allege facts sufficient to reasonably infer that her protected activity was the "but-for" cause of her supervisors' alleged adverse actions. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) ("The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."). If an adverse action occurs soon after an employee engages in protected activity, this raises a presumption of causation. "A causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (quoting *Price v. Thompson*, 380 F.3d 20, 213). If, however, temporal proximity between the protected conduct and alleged adverse action is lacking, Plaintiff must allege that their employer exhibited "continuing retaliatory conduct and animus" in the intervening period. *See Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007).

Plaintiff relies on the temporal proximity between her EEOC filing date and her supervisors' payroll modifications, which she alleges began three days later. Dkt. 19 at 13. This temporal proximity is sufficient to raise a presumption of causation. While Plaintiff's reassignment to Supervisor Martin happened in February, two months after she filed her EEOC case, Plaintiff's allegations of payroll manipulation in December and January constitute retaliatory conduct in the intervening period. Similarly, while Plaintiff's allegations of timecard manipulation in April of 2018 occurred four months after her protected activity in December, she has alleged

10

several retaliatory actions during the intervening period, including her payroll modification and supervisor reassignment. Thus, while the *Pascual* analysis suggests that four months is too long to establish causation by temporal proximity alone, Plaintiff has alleged other retaliatory conduct in the intervening period. 193 F. App'x 229, 233 (4th Cir. 2006).

Plaintiff also alleges that Defendant searched her desk, delayed her joint duty assignment, and deleted her leave hours, all within one month after NGA's OGC received interrogatories and learned of Plaintiff's EEOC case on May 14, 2018. As Defendant concedes, this is sufficient to establish causation via temporal proximity alone. Dkt. 17 at 9; *see Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 247 (4th Cir. 2015) (finding plaintiff established a *prima facie* case where recommendation for termination came "less than one month" after plaintiff's protected activity). While Plaintiff has not specified when in June of 2018 her leave hours were deleted, she sufficiently alleges a retaliatory animus in the period between May and June by claiming that the desk search and joint duty assignment delay occurred during this period.

Defendant argues that the alleged deletion of leave hours in June was a result of allegations of timecard fraud made against Plaintiff in April of 2018, and thus could not have been retaliation for interrogatories sent in May of 2018. *See Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001))). This contention takes a narrow view of Plaintiff's complaint. At this stage, the Court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)," *Twombly*, 550 U.S. at 555-56, and must "construe [the facts] in the light most favorable to [the plaintiff]." *Dao v. Faustin*, 402 F. Supp. 3d 308, 315 (E.D. Va. 2019)

11

(quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015)). Here, Plaintiff claims she filed her EEOC case in December of 2017 and alleges multiple instances of retaliatory conduct by her employer between December of 2017 and June of 2018. Thus, Plaintiff has sufficiently alleged a pattern of "continuing retaliatory conduct and animus" throughout the relevant period to survive a 12(b)(6) motion. *See Lettieri*, 478 F.3d at 650 (4th Cir. 2007).

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss the Amended Complaint (Dkt. 16) is DENIED; and it is

FURTHER ORDERED that Defendant's Motion to Vacate Initial Scheduling Order (Dkt. 26) is DENIED.

It is SO ORDERED.

Alexandria, Virginia
July 26, 2022

_____/s/_____
Rossie D. Alston, Jr.
United States District Judge